# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL STEPHEN KELLER,<br><br>            Plaintiff,<br><br>      v.<br><br>SHIRLEY, *et al.*,<br><br>            Defendants. | Case No.  1:22-cv-01487-BAM (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS<br><br>(ECF Nos. 1, 14, 15)<br><br>**FOURTEEN (14) DAY DEADLINE** |

**I.      Background**

Plaintiff Paul Stephen Keller ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

On September 13, 2023, the Court screened the complaint and found that Plaintiff stated a cognizable claim against Defendant Degough, in his individual capacity, for deliberate indifference to conditions of confinement in violation of the Eighth Amendment, but failed to state any other cognizable claims for relief against any other defendants.  (ECF No. 14.)  The Court ordered Plaintiff to either file an amended complaint or notify the Court of his willingness to proceed only on the cognizable claim identified by the Court.  (*Id.*)  On October 4, 2023, Plaintiff notified the Court that he does not wish to file a first amended complaint, and is willing

to proceed only on his claims against Defendant Degough, in his individual capacity, for deliberate indifference to conditions of confinement in violation of the Eighth Amendment. (ECF No. 15.)

## II. Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

### A. Allegations in Complaint

Plaintiff is currently housed at Wasco State Prison ("WSP") in Wasco, California, where the events in the complaint are alleged to have occurred. Plaintiff names the following defendants: (1) Heather Shirley, Warden; (2) James Cronjager, Health and Safety Director; and (3) Scott Degough, Contractor – Plant Manager II. All defendants are employed at Wasco State Prison-Reception Center and are sued in their official and individual capacities.

Plaintiff alleges as follows:

Claim I:

Pursuant to a posted notice at WSP-Reception Center ("WSP-RC"), since December 14, 2017, WSP-RC has been failing California Domestic Water Quality and Monitoring Regulations, as well as violating anti-pollution laws, by having a contaminant named 1,2,3 – Trichloropropane ("1,2,3-TCP") within the institution's water, at levels well over the legal action "red line" limit.

1,2,3-TCP is an organic compound, a colorless liquid that is used as a solvent and other specialty applications. 1,2,3-TCP is produced, the addition of "chlorine to allyl chloride," and is produced as a byproduct, and produced in significant quantities as an "unwanted byproduct of the production of other chlorinated compounds, such as "epichlorohydin and dichloropropene." Historically, 1,2,3-TCP has been used as a "paint or varnish remover," a "cleaning and degreasing agent," and a solvent.

Plaintiff is being exposed, as well as forced to utilize, contaminated water at WSP. The contaminant in the water has, and is, harming Plaintiff due to skin contact (washing hands, showering, etc.) and ingestion (drinking, preparing food, etc.). 1,2,3-TCP is recognized in the State of California as a human carcinogen that causes cancer, as well as short-term and long-term conditions due to the degrees of exposure and consumption. The drinking water at WSP-RC has been contaminated 5 years. The levels of 1,2,3-TCP have elevated tremendously. The California State Water Resources Control Board's Division of Drinking Water has established an enforceable "maximum contaminant level of 0.005 ug/L, or equivalent to 5 ng/L (parts per trillion)." Yet, the contaminant in WSP's water has grown from 0.008 ug/L to 0.013ug/L, from 0.008 to 0.014 ug/L, from 0.008 ug/L to 0.019 ug/L, and from 0.008 to 0.023 ug/L. The State of California considers 1,2,3-TCP to be a regulated contaminant that must be monitored, because it's a contaminant that is more dense than water, and settles at the bottom of reservoirs or any other appliance that holds water, and is hard to remove.

Defendant Shirley, the Warden of WSP-RC and Chief Executive Officer of the institution, is responsible for the custody, treatment, training, and discipline of all inmates under her charge. She is to establish plans and procedures as are required by the Secretary of the Department of

3

1  Corrections and Rehabilitation (California), for implementation of regulations.  Defendant Shirley
2  has failed in her duty as the Chief Executive Officer of WSP-RC by failing and attempting to
3  implement failed processes that are extremely ineffective, and were not timely in removing the
4  contaminant 1,2,3-TCP from Plaintiff's drinking water.  Defendant Shirley has failed to fully
5  address the risks and dangers and concerns about the exposure to unsanitary drinking water which
6  the inmate population is being forced to utilize.  Furthermore, because of indifference, as well as
7  her negligence, the contaminant in the drinking water continues to worsen.  Defendant Shirley has
8  failed in her duty to keep the institution's population safe.  Her negligent adverse action(s) and
9  inaction(s), and the notion to do nothing adequate enough to fix the water issue, continues to let
10 cancerous infected water make it to the utilizing water spouts of the institution.  Defendant
11 Shirley has allowed the placement of a faulty GAC (Granulated Activated Carbon) System to
12 continue to stay in place, which only exacerbates the toxin within the drinking water.  Defendant
13 Shirley continues to run a hazardous institution, and subjects Plaintiff to harsh conditions of
14 confinement.  She neglected to do a follow-up on a stats summary on the faulty GAC system for
15 the institution, to avoid an intentional shutdown of the institution, because of the severity of the
16 toxic build-up whin the institution's water.  Defendant Shirley has failed to create or establish an
17 effective policy and protocol for removing the cancerous carcinogen out of the water, and took no
18 sufficient steps that would lead to easing Plaintiff's apprehension, or to remedy the infected water
19 problem.  She has failed to train staff under her authority who may be "directly or indirectly"
20 involved in the process of discussing, implementing, researching harm, and initiating a plan, or
21 plans in a timely manner, that would take steps to fix the cancerous water issue or at least reduce
22 the risk(s) and danger(s).  Defendant Shirley has failed to protect Plaintiff, as promised when
23 Plaintiff signed Body, Life, and Limb over to the custody of her institution.
24        Claim II:
25        Defendant J. Cronjager is the Health and Safety Director at WSP-RC.  By his action(s)
26 and inaction(s) Plaintiff's life and health are being endangered presently and in the future.
27 Defendant Cronjager has full knowledge of the severe risk(s) and danger(s) within the institution,
28 regarding the infected water issue and knows the protocol(s) for such risk(s) and danger(s) and

4

1    knows what is to be done about them.  He has a duty to always second guess, investigate, and go
2    over and beyond to make sure that WSP is properly informed of/on health and safety risks, as
3    well as making sure that the institution's water is not unsanitary or contaminated with
4    carcinogens that are a threat to Plaintiff's life and health.  However, Defendant Cronjager has
5    failed in his duties as the Director of Health and Safety.  Due to utilizing the institution's water,
6    Plaintiff has become internally ill, with illnesses that cause him great internal pain (abdominal
7    pain, chest pain, bowel movement pain, etc.).  Such illnesses are called Helicobacter Pylori ("H.
8    Pylori"), Erosive Gastritis, Mild Duodenitis, Gastroesophageal Reflux Disease, Irritable Bowel
9    Syndrome, Erythema of the intestines, and internal Hemorrhoids.  Plaintiff had none of the
10   mentioned illnesses until being incarcerated at WSP, nor does Plaintiff or his family have a
11   history of contracting the above-mentioned illnesses.  (The first illness Plaintiff contracted was H.
12   Pylori.  All other illnesses came after the contraction of H. Pylori.)  The pain Plaintiff experiences
13   is so severe at times, to the point where he has to lay in a fetal position until the pain goes away.
14   Plaintiff does this on a daily basis, for longer than thirty minutes at a time.  Other times, Plaintiff
15   exercises extremely hard, just to give himself a different kind of pain to try and cope with his
16   internal pain.  Plaintiff had to go to the institution's emergency health unit on more than three
17   occasions because of the severity of his symptoms.  The water Plaintiff utilizes is poisoning him,
18   and he's been consuming the infected water since 2018.
19         Plaintiff has been suffering from these illnesses, along with their symptoms, since June of
20   2019, up to 3 years now, and continues to suffer.
21         Due to Defendant Cronjager's failure to act timely and properly to save Plaintiff's health,
22   this endangers Plaintiff's life and health even further.  Defendant Cronjager is responsible for
23   WSP's population's health and safety, and making sure the population's health and safety is
24   secure and safe.  He has failed in his duties.  He has knowledge of the contaminated water issue at
25   WSP, but has failed to intervene in any way.
26         Claim III:
27         Defendant S. Degough, the Contractor and Plant Manager II of WSP-RC, has relayed
28   false information to the institution's staff regarding the real risks and dangers of the contaminant

1,2,3-TCP, thus showing blatant disregard to Plaintiff's life, safety, and health. If Defendant Degough properly monitored the increase of 1,2,3-TCP and correctly informed the institution's administration, Plaintiff would not be utilizing contaminated water, nor would Plaintiff be infected by numerous internal illnesses. There was a 3 year marker set, from December 14, 2017 to December 14, 2020, to have remedied the cancerous water issue at the institution. Yet, nothing adequate has been done about the problem. As Defendant Degough is the Supervising Plant Manager, he has failed to circumvent the egregious failures of past contractors, regulations, and plans that showed to be extreme risks to human lives. In his authority over the water quality, and the water operations of the institution, he is supposed to make sure that the quality of the water is safe, and the operations of the water are run properly and correctly. Defendant Degough has failed in his duties as the contractor and Supervising Plant Manager. Plaintiff is not safe from consuming toxic, infected water due to Defendant Degough's slight intervention.

Defendant Degough is the author of a memo/notice that is vague, and continues to circulate throughout WSP, with minimal updates (which are supposed to be posted every quarter of the year), to the real risks and dangers to Plaintiff and the institution's population. If Defendant Degough ordered a more bipartisan test of the water and correctly corresponded with the Health and Safety Director (Defendant Cronjager), and the Warden (Defendant Shirley), Plaintiff's suffering and subjection would not exist, nor would it continue. Defendant Degough has failed to properly inform his supervisory personnel of the institution about potential remediation strategies and techniques. The GAC system has failed, and has been faulty since 2017, which means that the system has failed in extracting the contaminant in the institution's water. Defendant Degough is supposed to know of different remediation strategies and techniques that will work and succeed. Such remediation strategies are: (1) remediation of 1,2,3-TCP can occur through in situ chemical oxidation; (2) permeable reactive barriers; (3) other potential strategies. Defendant Degough has failed to inform of remediation techniques, which have been studied and/or applied with varying degrees of success, such as: in situ chemical reduction, reduction with zerovalent metals, particularly zerovalent zinc, which may be particularly effective in 1,2,3-TCP remediation. Bioremediation may also be a promising clean-

1   up technique as well, however, Defendant Degough fails/neglects to mention any of this in his
2   memos/notices.
3         In a drinking water project proposed by the United States Environmental Protection
4   Agency ("EPA"), 1,2,3-TCP is one of sixteen human carcinogens.  In addition, only the State of
5   California has significant regulation of 1,2,3-TCP.  Defendant Degough is exhibiting
6   incompetence that is beyond one seated in position.  A single e-mail or phone call to his
7   supervisors would have reduced Plaintiff's risk of failed health.  It is Defendant Degough's duty
8   to take the proper steps, as well as Defendant Shirley and Defendant Cronjager to circumvent
9   Occupational Safety and Health Administration ("OSHA") violations, by identifying and
10  classifying the removal of deadly, harmful chemical contaminants pursuant to OSHA standards.
11  If this was done, Plaintiff's life and health would not be failing, and his safety and security would
12  not be in danger.  There are rules and standards that exist, that are set by OSHA, that none of the
13  Defendants has followed.  Because of each Defendant's negligent oversight, Plaintiff, as well as
14  the population at WSP, is being poisoned.  If the standards of OSHA, the Federal Anti-Pollution
15  Act, and the CDCR Rules and Regulations were properly followed in maintaining a safe and
16  healthy environment, no one would be at risk or in danger of their health failing, and Plaintiff
17  would not be forced to utilize unclean, contaminated water.
18        Defendant Degough, in creating and posting vague information, has failed in his duty to
19  remedy the contaminated water issue.  As his notice indicates, the continual consumption of
20  WSP's contaminated water, infected by 1,2,3-TCP, will cause cancer over time, or will heighten
21  the risk of contracting cancer.  He has held back valuable, insightful information as to the solution
22  to the infected water problem, and has not fully explained what 1,2,3-TCP is, where it comes
23  from, and what damage it causes to humans' health.  His low degree of care, as well as
24  Defendants Shirley and Cronjager, has stopped any other staff member from taking the water
25  issue seriously and as a threat, which stops them from creating a life saving process, protocol, and
26  policy for Plaintiff to utilize.  Plaintiff personally reached out to Defendant Degough, as his
27  notice suggests, but to no avail.  Without the proper information, Plaintiff could not prepare
28  himself for the outcome of utilizing contaminated water.  Additionally, the inactions and actions

of all named Defendants in this complaint has forced Plaintiff to continue to utilize the cancerous water, with no reasonable accommodations or alternatives.  Plaintiff needs water. Clean water. Without water, Plaintiff will suffer a substantial amount more due to dehydration.

Defendants Shirley, Cronjager, and Degough have first-hand knowledge of the contaminated water issue at WSP.  All named Defendants are responsible for the Health and Safety of inmates, at least as it relates to the water issue.  Each named defendant works, and is employed in Kern County, which gives them knowledge of the contaminated water issue that is occurring throughout Kern County, which has been publicized through the news media.

Request for Relief:

Plaintiff seeks compensatory damages.

**B.      Discussion**

     **1.      Supervisory Liability**

Insofar as Plaintiff is attempting to sue the Warden or any other defendant, based *solely* upon his or her supervisory role, he may not do so.  Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior.  *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989*); accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms."  *Corales v. Bennett*, 567 F.3d at 570.  Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation."  *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other

1  grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970). When a defendant holds a supervisory
2  position, the causal link between such defendant and the claimed constitutional violation must be
3  specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*,
4  589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement
5  of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*,
6  673 F.2d 266, 268 (9th Cir. 1982).

7  As pled, Plaintiff fails to state a claim against either Defendant Shirley or Defendant
8  Cronjager based on their supervisory roles. While Plaintiff alleges that Defendants Shirley and
9  Cronjager failed to take any necessary or effective measures to correct the contaminated water at
10 WSP, Plaintiff also alleges that Defendant Degough relayed false, incorrect, or no information to
11 Defendants Defendants Cronjager and Shirley about the water quality. Aside from Plaintiff's
12 conclusory allegation that each defendant is employed in Kern County and would therefore have
13 knowledge of the contaminated issue throughout the county because it has been publicized
14 through the news media, there is no other indication that Defendant Cronjager or Shirley was
15 aware of the water quality issue at WSP. As there is also no indication that Defendant Cronjager
16 or Shirley directly participated in the water contamination, or were aware of some deficiency in
17 their training or supervision of Defendant Degough, Plaintiff fails to allege the requisite causal
18 connection between these defendants in their supervisory roles and the contaminated water at
19 WSP.

20  **2.  Official Capacity**

21  Plaintiff may not pursue his claims for monetary damages against the named defendants in
22 their official capacities. "The Eleventh Amendment bars suits for money damages in federal
23 court against a state, its agencies, and state officials in their official capacities." *Aholelei v. Dep't.*
24 *of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). However, the Eleventh
25 Amendment does not bar suits seeking damages against state officials in their personal capacities,
26 *Hafer v. Melo*, 502 U.S. 21, 30 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003), or
27 suits for injunctive relief brought against state officials in their official capacities, *Austin v. State*
28 *Indus. Ins. Sys.*, 939 F.2d 676, 680 n.2 (9th Cir. 1991). Thus, Plaintiff may only proceed in this

action for monetary damages against defendants in their individual capacities.

### 3. Eighth Amendment – Conditions of Confinement

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825 (1994); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Thus, no matter where they are housed, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted). To establish a violation of the Eighth Amendment, the prisoner must "show that the officials acted with deliberate indifference . . ." *Labatad v. Corrs. Corp. of Amer.*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)).

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer*, 511 U.S. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837; *Anderson v. Cty. of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995).

Objectively, extreme deprivations are required to make out a conditions-of-confinement claim and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Although the Constitution "'does not mandate comfortable prisons,'" *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), "inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time," *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989).

Courts have long recognized that exposure to environmental conditions which pose a health risk, either present or future, can support a claim under the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 3335 (1993) (environmental tobacco smoke); *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995) (asbestos); *Carter v. Smith*, No. C–13–4373 EMC (pr), 2015 WL 4322317, at *7–11 (N.D. Cal. 2015) (lead paint and asbestos); *Yellen v. Olivarez*, No. CIV S–94–

1298 GEB DAD P, 2012 WL 3757373, at *8 (E.D. Cal. 2012) (contaminated water), *adopted in full*, 2012 WL 4210030 (E.D. Cal. 2012); *Rouse v. Caruso*, No. 06–CV–10961–DT, 2011 WL 918327, at *24–25 (E.D. Mich. 2011) (contaminated water), *adopted in full*, 2011 WL 893216 (E.D. Mich. 2011).

At the pleading stage, Plaintiff states a cognizable claim against Defendant Degough, in his individual capacity, for deliberate indifference to conditions of confinement. Plaintiff alleges that Defendant Degough is the Supervising Plant Manager with authority over the water quality and water operations of the institution, and he failed to correct the failures of past contractors, regulations, and plans to make sure the water quality is safe and relayed false information regarding WSP's contaminated water to his supervisors.

However, Plaintiff fails to state a cognizable Eighth Amendment claim against Defendant Shirley or Cronjager in their individual or official capacities. As noted above, Plaintiff has provided only conclusory allegations that either Defendant was aware of the water quality issue. Instead, Plaintiff alleges that Defendant Degough relayed false, incorrect, or no information to Defendants Shirley and Cronjager about the institution's water quality.

### III.    Conclusion and Recommendation

Based on the above, the Court finds that Plaintiff's complaint states a cognizable claim against Defendant Degough, in his individual capacity, for deliberate indifference to conditions of confinement in violation of the Eighth Amendment. However, Plaintiff's complaint fails to state any other cognizable claims for relief against any other defendants.

Accordingly, the Clerk of the Court is HEREBY DIRECTED to randomly assign a District Judge to this action.

Furthermore, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's complaint, filed November 16, 2022, (ECF No. 1), against Defendant Degough, in his individual capacity, for deliberate indifference to conditions of confinement in violation of the Eighth Amendment; and
2. All other claims and defendants be dismissed based on Plaintiff's failure to state claims upon which relief may be granted.

11

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:     **October 10, 2023**              /s/ *Barbara A. McAuliffe*           _
                                            UNITED STATES MAGISTRATE JUDGE