**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL STEPHEN KELLER,<br><br>            Plaintiff,<br><br>     v.<br><br>DEGOUGH,<br><br>            Defendant. | Case No.  1:22-cv-01487-BAM (PC)<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES<br><br>(ECF No. 40) |

**I.     Background**

Plaintiff Paul Stephen Keller ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds against Defendant Degough ("Defendant") for deliberate indifference to conditions of confinement in violation of the Eighth Amendment.  All parties have consented to United States Magistrate Judge jurisdiction.  (ECF No. 34.)

On June 21, 2024, Defendant filed a motion for summary judgment on the ground that the undisputed facts in the record prove that Plaintiff failed to properly exhaust available administrative remedies before filing suit, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).[1]  (ECF No. 40.)  Plaintiff filed an opposition on July 15, 2024.  (ECF No. 43.)

---

[1] Concurrent with this motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment.  *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1988); *Klingele v. Eikenberry*, 849 F.2d 409, 411–12 (9th Cir. 1988). (ECF No. 40-3.)

1

1  Defendant filed a reply on July 30, 2024.  (ECF No. 44.)

2  The motion for summary judgment is deemed submitted.  Local Rule 230(l).

**II.    Defendant's Motion for Summary Judgment**

**A.    Statutory Exhaustion Requirement**

Section 1997e(a) of the Prison Litigation Reform Act of 1995 provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The failure to exhaust is an affirmative defense, and the defendant bears the burden of raising and proving the absence of exhaustion.  *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Albino*, 747 F.3d at 1166.  "In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)."  *Albino*, 747 F.3d at 1166.  Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows they failed to exhaust.  *Id.*

Defendant must first prove that there was an available administrative remedy, and that Plaintiff did not exhaust that available remedy.  *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted).  The burden then shifts to Plaintiff to show something in his particular case made the existing and generally available administrative remedies effectively unavailable to him.  *Williams*, 775 F.3d at 1191 (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted).  The ultimate burden of proof on the issue of exhaustion remains with Defendant.  *Id.* (quotation marks omitted).

**B.    Summary Judgment Standard**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

2

entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); *Albino*, 747 F.3d at 1166; *Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendant bears the burden of proof in moving for summary judgment for failure to exhaust, *Albino*, 747 F.3d at 1166, and must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," *id.* at 1172. If the defendant carries his burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Id.* at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.*

**III.     Discussion**

    **A.     Summary of CDCR's Administrative Review Process**

Effective June 1, 2020, and during the relevant time, the California prison grievance system had two levels of review.[2] Cal. Code Regs. tit. 15, § 3480, *et seq.* Pursuant to this system, an inmate may "dispute a policy, decision, action, condition, or omission by the Department or departmental staff that causes some measurable harm to their health, safety, or

---

[2] The inmate grievance process was further revised by emergency regulations that took effect in January 2022 and by subsequent emergency regulations. Cal. Code Regs. tit. 15 §§ 3480–3487.

welfare." *Id.* § 3481(a).  Inmate claimants are required to "describe all information known and available to the claimant regarding the claim, including key dates and times, names and titles of all involved staff members (or a description of those staff members), and names and titles of all witnesses, to the best of the claimant's knowledge[.]" *Id.* § 3482(c).  In response, the inmate claimant will receive a written decision from the Institutional or Regional Office of Grievances clearly explaining the reasoning for the Reviewing Authority's decision as to each claim.  *Id.* § 3481(a).  The inmate claimant has the ability to submit a written appeal concerning one or more claims to dispute the decision by the Institutional or Regional Office of Grievances, and in response will receive a written decision from the Office of Appeals clearly explaining the reasoning for the decision as to each claim.  *Id.*  Generally, "[c]ompletion of the review process by the Office of Appeals constitutes exhaustion of all administrative remedies available to a claimant within the Department." *Id.* § 3486.

     **B.**    **Undisputed Material Facts (UMF)**[3]

PLAINTIFF'S ALLEGATIONS

1. Plaintiff Paul Stephen Keller (CDCR No. AT8673) ("Plaintiff") is an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR").  (ECF No. 1 ("Compl.") at 1; ECF No. 40-5 ("Marquez Decl.") ¶ 3; ECF No. 40-4 ("Moseley Decl.") ¶ 7.)

2. Plaintiff filed this action on November 16, 2022, regarding alleged water contamination at Wasco State Prison ("Wasco").  (Compl.)

3. Plaintiff's complaint alleges the following:

> Defendant S. DeGough has relayed false information to the institution's staff regarding the real risks and dangers of the contaminant 1,2,3–Trichloropropane, which shows blatant disregard to Plaintiff's life, safety and health.
>
> If Defendant DeGough properly monitored the increase of 1,2,3–TCP, and correctly informed the institution's administration, Plaintiff would not be utilizing

---

[3] *See* Defendant's Separate Statement of Undisputed Facts in Support of Motion for Summary Judgment Re: Exhaustion, (ECF No. 40-2), and Plaintiff's Response to the Defendant's Statement of Undisputed Facts, (ECF No. 43, pp. 21–26).  Unless otherwise indicated, disputed and immaterial facts are omitted from this statement and relevant objections are overruled.

contaminated water nor would he be infected by numerous internal illnesses.

Defendant DeGough failed in his duty(ies) as the contractor and supervising plant manager, and failed to circumvent the egregious failure(s) of past contractors, regulations, and plans that showed to be extreme risk[s] to human lives. In his authority of the water quality, and the water operations of the institution, he is supposed to make sure that the quality of water is safe, and operation of the water ran properly and correctly.

Defendant DeGough is the author of a memo/notice that is vague, and continues to circulate at Wasco State Prison with minimum updates (which are supposed to be posted every quarter of the year) to the real risk(s) and danger(s) to Plaintiff and the institution's population. Defendant DeGough has failed to properly inform supervisory personnel at the institution about potential remedies and techniques. Defendant DeGough exhibited incompetence that is beyond one seated in position.

(*See* Compl. at 5, 17–19; *see also* ECF No. 14 ("Screening Order").)

4. In screening the complaint, the Court found a cognizable claim against Defendant for deliberate indifference to conditions of confinement in violation of the Eighth Amendment. The Court dismissed all other claims and Defendants, and Plaintiff consented to this dismissal. (Screening Order; ECF No. 15 ("Notice to Proceed on Cognizable Claims"); ECF No. 22 ("Order Directing Service").)

THE INMATE APPEALS PROCESS

5. At all relevant times, CDCR and Wasco provided inmates with an administrative process to grieve "any policy, decision, action, condition, or omission by the [CDCR] or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." (Marquez Decl. ¶ 3; Compl. at 5; Moseley Decl. ¶¶ 2–5); Cal. Code Regs. tit. 15, § 3084.1(a) (repealed eff. June 1, 2020).

6. Before June 1, 2020, a CDCR inmate was required to follow the procedures set forth in California Code of Regulations, title 15, sections 3084–3085 (repealed eff. June 1, 2020). It required the inmates to submit a grievance form describing the "specific issue and action requested," include "all facts known and available" regarding the issue, and "list all staff member(s) involved" or provide other information that would help prison staff to identify the relevant staff members. (Marquez Decl. ¶¶ 3, 4; Moseley Decl. ¶ 6); Cal.

5

Code Regs. tit. 15, §§ 3084–3085, §§ 3084.2(a), (a)(3)–(4) (repealed eff. June 1, 2020).

7. Grievances had to be submitted within thirty calendar days from the date the inmate learned of the issue or the relevant event occurred. The inmates had to proceed through three levels of review and receive a decision at the final level to complete the process and exhaust administrative remedies. Cal. Code Regs. tit. 15, §§ 3084.8(b)(1), 3084.1(b), 3084.7(d)(3) (repealed eff. June 1, 2020).

8. The electronic database used for tracking grievances was called the Inmate/Parolee Appeals Tracking System – Level I and II ("IATS"). Grievances that were rejected or cancelled may be reflected in IATS as a single line entry without information related to any level of review. (Marquez Decl. ¶ 7); Cal. Code Regs. tit. 15, §§ 3084.6(b), 3084.6(c) (repealed eff. June 1, 2020).

9. If Plaintiff submitted a grievance to another institution regarding an event that occurred at Wasco, the institution would have forwarded the grievance to Wasco for review and the grievance would be reflected on Wasco's IATS printouts. (Marquez Decl. ¶ 10, Ex. 1.)

10. As of June 1, 2020, an inmate is required to follow the procedures set forth in California Code of Regulations, title 15, sections 3480–3487 (eff. June 1, 2020). An inmate may submit a written grievance containing one or more claims to dispute a policy, decision, action, condition, or omission by CDCR or CDCR staff that causes some measurable harm to the inmate's "health, safety, or welfare." The grievance process has two levels of review, and it requires the inmates to submit a grievance in writing to the Institutional Office of Grievances within thirty days. If an inmate wishes to appeal the Office of Grievances' decision, they may do so in writing within thirty days. (*Id.* ¶ 5; Moseley Decl. ¶ 6); Cal. Code Regs. tit. 15, §§ 3480–3487, §§ 3481(a), 3482, 3482(a)(1) and (b), 3482(a)(2) and (c), 3485(a)–(b) (eff. June 1, 2020).

11. Subsequent to June 1, 2020, inmates are required to describe all information known and available regarding the claim, including key dates and times, names and titles of all involved staff (or descriptions of those staff members), and names and titles of all witnesses to the best of the claimant's knowledge. Inmates must also include any and all

6

|   |   |
|---|---|
| 1 | supporting documents available.  Claims may be rejected for any of the reasons including |
| 2 | failure to submit the claim within the applicable time frames.  Completion of the review |
| 3 | process by the Office of Appeals constitutes exhaustion of all administrative remedies |
| 4 | available to a claimant.  A claim is not exhausted if it was disallowed or rejected. |
| 5 | (Marquez Decl. ¶ 6); Cal. Code Regs. tit. 15 §§ 3482(c)(2), 3482(c)(4), 3487, 3486(m), |
| 6 | 3482(d)(3), 3485(d)(3), 3487(a) (eff. June 1, 2020). |

12. Wasco maintains a record of all inmate grievances filed at this institution.  After June 2020, the electronic database used for tracking grievances is called the Strategic Offender Management System/Appeal Tracking ("SOMS").  (Marquez Decl. ¶ 7.)

13. Subsequent to January 2022, emergency regulations took effect further revising the inmate grievance process.  These regulations are still contained in Cal. Code Regs. tit. 15 §§ 3480–3487.  Because the relevant time frame for Plaintiff's grievances encompasses the emergency regulations, those regulations will be addressed to the extent they are applicable to Plaintiff's relevant grievances/appeals.  (*Id.* ¶ 8); Cal. Code Regs. tit. 15 §§ 3480–3487 (eff. 2022).

14. Post-June 2020 grievances are reflected on a single print out and in a single system, regardless of the institution involved.  All grievance coordinators have access to all new grievances and can testify as to their authenticity, regardless of the institution handling the grievance.  (Marquez Decl. ¶ 11, Ex. 2.)

15. The Office of Appeals receives, reviews, and maintains all non-medical inmate grievances at the final level of review.  A final decision by the Office of Appeals generally exhausts an inmate grievance.  (Moseley Decl. ¶¶ 2, 5.)

16. Between August 9, 2018, the date of Plaintiff's admission at Wasco, and November 16, 2022, the date Plaintiff filed his operative complaint, Plaintiff submitted only one grievance (Log No. 184116) relevant to the allegations in his complaint to Wasco's Office of Grievances and the Office of Appeals.  (Marquez Decl. ¶¶ 12, 13, Exs. 2, 3; Moseley Decl. ¶¶ 9, 10.)

///

THE RELEVANT GRIEVANCES/APPEALS

17. In grievance 184116, Plaintiff alleged that he received a May 6, 2021 notice listing Defendant's name that the water used by inmates at Wasco was contaminated. The grievance did not mention Defendant. Grievance 184116 was dated November 3, 2021. Wasco's Office of Grievances rejected grievance 184116 because Plaintiff failed to submit it within thirty days from the date he learned of the contamination issue. (Marquez Decl. ¶ 13, Ex. 3); Cal. Code Regs. tit. 15 §§ 3482(b), 3487(a)(1) (eff. June 1, 2020).

18. Plaintiff appealed the decision rejecting grievance 184116 to the Office of Appeals. Plaintiff alleged that he was exposed to contaminated water at Wasco as far back as early 2018. Plaintiff also alleged that the Office of Grievances improperly rejected Plaintiff's underlying grievance. Plaintiff made no reference to Defendant in this appeal. The Office of Appeals' time to respond expired before it was able to render a decision. The Office of Appeals sent Plaintiff a letter dated January 15, 2022, stating that the time to respond expired and that Plaintiff would not be receiving any further response. As a result, the decision by the Office of Grievances served as the Department's final response to Plaintiff's allegations. (Moseley Decl. ¶ 9, Ex. 4); Cal. Code Regs. tit. 15 §§ 3482(b), 3487(a)(1), and 3487(a)(3) (eff. June 1, 2020).

19. Plaintiff submitted no other grievances regarding allegedly contaminated water at Wasco. (Marquez Decl. ¶¶ 9, 14, Exs. 1, 2; Moseley Decl. ¶¶ 8, 10.)

    **C.**    **Plaintiff's Objections to Marquez Declaration**[4]

Plaintiff objects to the declaration of F. Marquez, submitted in support of Defendant's motion for summary judgment. (ECF No. 43, pp. 10–13.) Plaintiff argues that the declaration is not admissible because it misstates the applicable regulations regarding the time constraints for filing grievances, and this statement of false language taints any other evidence included in the declaration. Accordingly, the false statements cannot be presented in an admissible form at trial. (*Id.*)

---

[4] Plaintiff states that he submits objections to both the Marquez and Moseley Declarations. (ECF No. 43, p. 10.) However, as Plaintiff provides argument only with respect to the Marquez Declaration, only the Marquez Declaration is addressed here. (*See id.* at pp. 10–13.)

Defendant argues that the declaration is admissible, because the Marquez Declaration correctly stated the regulations that were in effect at the time Plaintiff filed his grievance, rather than the regulations Plaintiff is relying on, which took effect after the relevant time period. (ECF No. 44, pp. 9–10.)

Plaintiff's objections to the Marquez Declaration are overruled. The Marquez Declaration correctly relies upon the regulations in effect in November 2021, when Plaintiff submitted the grievance at issue in this action. Those regulations provide that a grievance must be submitted within 30 calendar days of discovery of an adverse policy, decision, action, condition, or omission by the Department, and an appeal of an Office of Grievances decision must also be submitted within 30 calendar days. Cal. Code Regs. tit. 15, §§ 3482(b), 3485(b) (eff. June 1, 2020). In challenging the Marquez Declaration, Plaintiff incorrectly cites to emergency regulations that did not take effect until January 2022, which provide 60-day timelines for submission of grievances and appeals on which Plaintiff relies. Cal. Code Regs. tit. 15 §§ 3480–3487 (eff. 2022). Accordingly, the Marquez Declaration is admissible for the purposes of the motion for summary judgment.

### D.    Parties' Positions

Defendant contends that the undisputed facts show that Plaintiff's deliberate indifference to conditions of confinement claim was not properly exhausted before filing suit, as required by the PLRA. Plaintiff's one grievance relevant to the alleged water contamination issue was rejected as untimely, Plaintiff did not submit any grievances specifically against Defendant before filing this suit, and Plaintiff did not name Defendant in his relevant grievance. Plaintiff is also not excused from the exhaustion requirement. (Doc. 40-1.) Defendant requests that if the Court finds any genuine disputes of material fact regarding exhaustion, the Court set a "preliminary proceeding" to resolve any such disputes before the parties proceed to the merits of this case. (*Id.* at pp. 12-13.)

In opposition, Plaintiff argues that Defendant has failed to establish that there are no genuine disputes as to any relevant facts and that he is entitled to judgment as a matter of law. Plaintiff agrees that he filed a grievance regarding the contaminated water issue at Wasco on

November 3, 2021, the date he discovered the adverse policy, decision, action, condition, or omission, and the reviewing authority stated that he should have waited 30 days to file his grievance, or before December 3, 2021, without stating what regulation provided the 30-day timeline. Plaintiff argues that Title 15, § 3482 provides for submitting a claim within 60 calendar days of discovery of an adverse policy, decision, condition, or omission, and according to that section, the reviewing authority falsely rejected Plaintiff's claim. Further, the reviewing authority's claim that Plaintiff knew of quarterly posted notices is also false, as the May 6, 2021 notice was not posted in the building where Plaintiff was housed on May 6, 2021, but was posted on November 3, 2021, where he discovered it and filed a grievance on the same date. While Plaintiff drank the contaminated water since 2018, the first time Plaintiff saw a posted notice regarding the contaminated water was on November 3, 2021. Plaintiff also admits that he did not name Defendant or his position or title in the filed grievance, but Plaintiff did not know Defendant's name, position, or title. Even though Defendant is listed on the posted notices regarding the contaminated water, the information mentions him as a contact person only, and Plaintiff only found out at a later time who the Defendant was and what role he played regarding the Plant Operations at Wasco. Plaintiff admits that his available administrative remedies were not properly exhausted before filing the operative complaint, but explains that he was hindered by fear of the posted notice, haste, and ignorance of the law. In addition, Plaintiff argues that the Regional Appeals Office's failure to give a response to Plaintiff's appeal of the rejected grievance exhausted his administrative remedies, and that Defendant's exhaustion claims are the same as those stated in *Keller v. Alison*, Case No. 1:21-cv-01707-EPG-JLT, which was voluntarily dismissed without prejudice to Plaintiff re-filing, thus dismissing the exhaustion issue. Plaintiff further argues that even if the facts asserted by Defendant were properly shown by the motion papers and undisputed, his claims for summary judgment are based on an administrative grievance being filed too early, and an operative complaint being filed prematurely, not on any of the merit-based facts and claims within the complaint. Even if Defendant calculated the time periods correctly regarding exhaustion, Defendant is equitably estopped to plead the exhaustion defense due to the prior action of *Keller v. Allison* and because the present and previous cases

involve serious injuries that have partially disabled Plaintiff and left Plaintiff with permanent medical problems. Plaintiff argues the administrative remedies were not available because his grievance was rejected through biased review to avoid accountability and liability for the prison's water being infected. If the Court recommends that Defendant's motion for summary judgment be granted, Plaintiff requests that the case be dismissed, without prejudice to refiling the operative complaint against Defendant, now that it appears the administrative remedies were exhausted. (Doc. 43.)

In reply, Defendant contends that Plaintiff was aware of the water contamination issue at Wasco before November 3, 2021, because the notices were first posted on June 6, 2018 and then on a quarterly basis. Plaintiff had constructive notice of the May 6, 2021 notice because it was posted above the water fountain of building A-1, on A yard, at Wasco. Plaintiff admits that Wasco's water contamination issue goes as far back as early 2018, that the memos/notices regarding the water contamination were continuously circulated on a quarterly basis, and Plaintiff had been exposed to contaminated water since 2018 and was harmed in 2019, all admissions contrary to Plaintiff's argument that he became aware of the water contamination issue at Wasco on November 3, 2021, when the May 6, 2021 notice was posted. Plaintiff did not put the institution on notice regarding his claims against Defendant because he did not refer to Defendant or the misconduct now alleged in the complaint in his November 3, 2021 grievance or November 10, 2021 appeal. Plaintiff admits that he did not properly exhaust his administrative remedies, and Plaintiff's haste and ignorance of the law does not exempt Plaintiff from complying with the law. Plaintiff's voluntary dismissal of *Keller v. Allison* is immaterial to the case at bar, and the doctrine of equitable estoppel does not prevent Defendant from raising the exhaustion defense. The exhaustion process remained available to Plaintiff, and Plaintiff's grievance was properly rejected as untimely. The Office of Appeals' "Time Expired" response did not exhaust Plaintiff's administrative remedies, but instead confirmed proper rejection of Plaintiff's grievance as untimely. Finally, Plaintiff admits that he did not properly exhaust the available administrative remedies before filing his operative complaint, and Plaintiff may not exhaust after the filing of the operative complaint.

**F.   Analysis**

    1.    <u>Grievance Log No. 184116</u>

The parties agree that grievance 184116 is the only grievance potentially relevant to the allegations in Plaintiff's complaint.  UMF 17.  The Court finds that grievance 184116 did not exhaust Plaintiff's administrative remedies with respect to his claim against Defendant in this action.

    a.    *Timeliness*

As an initial matter, the parties also agree that grievance 184116 was rejected by Wasco's Office of Grievances as untimely.  UMF 17, 18.  However, Plaintiff disputes that his grievance was properly rejected as untimely.  (ECF No. 43 at pp. 2-4.)

Improper screening of an inmate's administrative grievance can be sufficient to render administrative remedies effectively unavailable such that exhaustion is not required under the PLRA. *Sapp v. Kimbrell*, 623 F.3d 813, 832 (9th Cir. 2010). To fall within this exception, Plaintiff must establish that a grievance would have sufficed to exhaust his claims in this suit and that the grievance was screened out for reasons inconsistent with or unsupported by applicable regulations. *Id.* at 823–24.

In grievance 184116, which was dated November 3, 2021, Plaintiff attached a May 6, 2021 notice listing Defendant's name that the water used by inmates at Wasco was contaminated. UMF 17.  Wasco's Office of Grievances rejected the grievance (UMF 17), stating:

> You did not submit the claim within the timeframe required by California Code of Regulations, title 15.  The date you discovered the adverse policy decision, action, condition, or omission by the Department was 11/03/2021; the date you submitted this claim was 11/03/2021.  You should have submitted your claim on or by 12/03/2021 to meet the 30 calendar day requirement set forth in the regulations.
>
> The attached document is dated 5/6/21, your grievance is dated 11/3/21. Additionally, you clearly note you have been drinking the institutions [sic] water since 2018, making you aware that the notices are provided quarterly.

(Marquez Decl. ¶ 13, Ex. 3.)

Defendant argues that grievance 184116 was properly rejected as untimely because Plaintiff failed to submit the grievance within thirty days from the date he received the May 6, 2021 notice regarding the water contamination issue, and because Plaintiff claimed in his appeal

12

of the Office of Grievances' rejection that he was exposed to contaminated water as far back as early 2018, but did not submit his relevant grievance until November 3, 2021. (ECF No. 40-1 at pp. 9-10.) Defendant also asserts that Plaintiff was aware of the water contamination issue at Wasco prior to November 3, 2021, because Plaintiff "admits" that memos/notices regarding water contamination were circulated quarterly and that he had been drinking the water since 2018. (ECF No. 44 at pp. 2-3).

Defendant's argument is not supported by the record. Rather, Plaintiff admits only that the notices were supposedly posted quarterly, not that he had seen them previously. UMF 3 ("which are supposed to be posted every quarter of the year"). And, while Plaintiff states that he has been drinking contaminated water since 2018, this statement cannot be read as an admission that he knew of the contamination since that time. (See ECF No. 1 at 8-9, UMF 18.)

In contrast, Plaintiff argues that the Office of Grievances' claim that he knew of the quarterly posted notices is false. (Doc. 43 at p. 3.) Plaintiff contends for the first time in his opposition brief, which is signed under penalty of perjury, that he did not discover the issue until November 3, 2021, when he first saw the posted notice regarding contaminated water dated May 6, 2021, and that he did not see any older notices until doing research in the prison's law library. (ECF No. 43 at 3-4.) Plaintiff also contends that the May 6, 2021 notice was not posted until November 3, 2021, where he discovered it and then filed his grievance. (*Id.* at p. 3.) Plaintiff's assertions made for the first time in his opposition brief are not otherwise supported by evidence in the record. *See Rivera v. AMTRAK*, 331 F.3d 1074, 1078 (9th Cir. 2003) ("Conclusory allegations unsupported by factual data cannot defeat summary judgment."); *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), as amended (Apr. 11, 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."). The grievance itself does not state when Plaintiff received the attached May 6, 2021 notice, (ECF No. 40-5, Ex. 3 to Marquez Decl.), nor does Plaintiff argue in his appeal the date when he first discovered the issue of contaminated water at the institution, (ECF No. 40-4, Ex. 4 to Moseley Decl.).

Understandably, Plaintiff may have been confused about the Office of Grievances'

response, as it initially appears to suggest that Plaintiff filed his grievance prematurely but then subsequently explains that the grievance was untimely, stating: "The attached document is dated 5/6/21, your grievance is dated 11/3/21. Additionally, you clearly note you have been drinking the institutions [sic] water since 2018, making you aware that the notices are provided quarterly." (ECF No. 40-4, Ex. 4 to Moseley Decl.)  Regardless of any ambiguity in the response, when Plaintiff was provided with an opportunity to clarify the date in his appeal, he made no attempt to specify the date that he became aware of the water contamination.  He did not clarify (or otherwise allege) that he failed to receive the 5/6/21 notice (or any other information regarding water contamination at Wasco) until November 3, 2021.  Indeed, in his appeal, Plaintiff did not identify any particular date that he became aware of the water contamination issue.  (*Id.*)  Plaintiff has not provided evidence that his discovery of the water contamination occurred fewer than 30 calendar days before he submitted grievance 184116.  Plaintiff's conclusory, self-serving statements in his opposition brief alone cannot create a genuine issue of material fact.  *Rivera*, 331 F.3d at 1078.

Nonetheless, even assuming Plaintiff's grievance was improperly rejected as untimely, the grievance did not adequately or sufficiently place the institution on notice of the nature of Plaintiff's claims or that they were brought against Defendant.  The grievance concerned contamination of the water at Wasco, but it fails to mention any affirmative misconduct by Defendant that would put the prison on notice of the nature of his claims in this action.  UMF 3, 17-18.

         b.  *Notice of Nature of Plaintiff's Claims Against Defendant*

Under the regulations in effect at the time, Plaintiff was required to describe all information known and available to him regarding the claim, "including key dates and times, names and titles of all involved staff members (or descriptions of those staff members), and names and titles of all witnesses to the best of the claimant's knowledge."  UMF 11; Cal. Code Regs. tit. 15 § 3482(c)(2) (eff. June 1, 2020).

Plaintiff admits that he did not state Defendant's name, position, or title in the filed grievance, even though Defendant's name is on all posted notices regarding the contaminated

14

water as a contact person. (ECF No. 43 at 4); UMF 17-18. Plaintiff claims, however, that he did not know Defendant's name, position, title, or role in plant operations at Wasco, and that § 3482(c)(2) requires only that "to submit a grievance, a claimant (shall) describe all information <u>known and available</u> to the claimant regarding the claim." (ECF No. 43 at p. 4) (emphasis in original).

Plaintiff is correct that under the relevant regulations he was not required to specifically include the name and title of the staff member involved in the issue(s) raised in the grievance. *See* UMF 11. However, even if Plaintiff did not know Defendant's role at the time he filed his grievance, he was still required to provide all information known and available to him regarding the claim. Plaintiff apparently knew Defendant's name at the time he filed his grievance, but did not include it. (ECF No. 43 at p. 4); *see also* UMF 17-18.

Moreover, even accepting as true Plaintiff's assertion that he only later learned Defendant's role in plant operations at Wasco, there is no allegation in the grievance that the water quality issue was the result of affirmative misconduct on the part of *any* person at Wasco, much less Defendant, sufficient to put the prison on notice of the nature of his claims. For remedies to be fully exhausted, a grievance must "alert the prison to a problem and facilitate its resolution." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (concluding that a prisoner's grievance cannot serve to exhaust administrative remedies where it fails to "'alert[ ] the prison to the nature of the wrong for which redress is sought'").

In relevant part, the grievance states:

> Pursuant to important information, regarding this institutions drinking water, the water has recently failed the drinking water standards (DWS). On the date of December 14th, 2017, a regulation change enacted a new Maximum Contaminant Level (MCL), for 1, 2, 3,-TCP. According to recent monthly tests, they have shown that the level of 1, 2, 3-TCP is above the standard of 0.005 ug/L. Water sample results, received in the Second Quarter of 2021, showed that the 1, 2, 3-Trichloropropane levels ranged from 0.008 to 0.019 ug/L, from the sources of Well #1, and Well #2. The average level of 1, 2, 3-TCP, over the last year, ranged from 0.008 to 0.022 ug/L, which is above the standard of (MCL), for 1, 2, 3-TCP. This is an immediate risk to me, because i've been drinking this institution's water since 2018, and, according to recent information, drinking water containing 1, 2, 3-TCP, in access of the (MCL) over many years, can have an increased risk of me contracting cancer. I am at a higher risk, even, because I have the underlining illnesses of H-Pylori, Irritable Bowel Syndrome, and Gastroesophageal Reflux Disease. Also, while incarcerated at this institution, I contracted COVID-19. I've

> never had these illnesses before, nor do I have a history of them, so how did I contract them? . . . Pursuant to the attached documents, I must avoid water that's not clean. Some of the treatments, for my illnesses, is to drink more water, to stay hydrated. By me being forced to drink contaminated water, my symptoms worsen. How am I to follow my treatment plans, if i'm forced to drink dirty water?

(ECF No. 40-5, Ex. 3 to Marquez Decl.) In the action requested section of the grievance, Plaintiff states, "I am requesting that accommodations be made in my behalf. Some type of compromise. Thank you. Also, I require that this institution take re-sponsibility, and accountability for these issues." (*Id.*)

Plaintiff's grievance complains that water at Wasco was contaminated and made him sick and he seeks a compromise to drinking contaminated water. The grievance does not mention Defendant DeGough, a plant manager, or any other individual, nor does it mention that anyone relayed false information to the institution staff regarding the risks and dangers of the 1, 2, 3-TCP contaminant. The grievance also does not mention that any individual (1) failed to properly monitor the increase of 1, 2, 3-TCP and correctly inform the institution's administration, (2) failed to circumvent the egregious failure(s) of past contractors, regulations, and plans that showed to be extreme risk(s) to human lives, (3) failed in his/her authority of the water quality, and the water operations of the institution, to make sure that the quality of water is safe, and operations of the water ran properly and correctly, (4) failed in his/her duties as the contractor and supervising plant manager, (5) failed to properly inform supervisory personnel of the institution about potential remedies and techniques, or (6) was exhibiting incompetence that is beyond one seated in position. The grievance fails to mention misconduct by any individual that would put the prison on notice of the nature of his claims in this action. *See* UMF 3. Critically, Plaintiff admits in his opposition that his available administrative remedies were not exhausted. (ECF No. 43 at p. 5.)

### 2.   *Keller v. Allison*, Case No. 1:21-cv-01707-JLT-EPG[5]

In challenging the motion for summary judgment, Plaintiff asserts that because Defendant filed an exhaustion-based motion for summary judgment in *Keller v. Allison*, Case No. 1:21-cv-

---

[5] A court may properly take judicial notice of court records in other cases. Fed. R. Evid. 201; *See United States v. Wilson,* 631 F.2d 118, 119 (9th Cir. 1980) (court may take judicial notice of its own records and the records in other cases).

16

01707-JLT-EPG, and that action was voluntarily dismissed without prejudice, Defendant cannot now raise the exhaustion issue in the instant action. (ECF No. 43 at p. 5-6.) Specifically, Plaintiff contends that Defendant is "equitably estopped to plead exhaustion defense, due to the initial summary judgement regarding exhaustion was part of the initial case . . . which was voluntarily dismissed without prejudice." (*Id.* at 6.)

To the extent Plaintiff is arguing that equitable estoppel precludes Defendant from asserting an exhaustion defense, this argument is not persuasive. "Equitable estoppel . . . focuses primarily on actions taken by the *defendant* to prevent a plaintiff from filing suit, sometimes referred to as 'fraudulent concealment.'" *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008) (citation omitted); *Howard v. Williamson*, No. 2:16-cv-1200 TLN KJN P, 2017 WL 5177721, at *8 n.7 (E.D. Cal. Nov. 7, 2017) (citation omitted). To establish equitable estoppel, the plaintiff "must point to some fraudulent concealment, some active conduct by the defendant *above and beyond* the wrongdoing upon which the plaintiff's claim is filed." *Id.*

According to the record in *Keller v. Allison*, Case No. 1:21-cv-01707-JLT-EPG, the dismissal of that action was initiated by Plaintiff, not Defendant, and was without prejudice to re-filing. (*Id.* at ECF No. 57 (Notice of Voluntary Dismissal); ECF No. 61.) The defendants merely stipulated to the dismissal without prejudice, both sides to bear their own costs and fees. (*Id.* at ECF No. 60.) There is no indication that Defendant undertook any action in the prior case to prevent Plaintiff from filing this suit. Plaintiff has identified no reason, besides existence of the prior action, that Defendant should be prevented from raising the failure to exhaust administrative remedies. Although a motion for summary judgment for exhaustion was filed in the prior action, that motion was never fully briefed before the voluntary dismissal and therefore never decided on its merits. (*Id.* at ECF Nos. 39, 55, 57, 61.)

Plaintiff additionally argues that Defendant's motion for summary judgment should be denied because it is based on the operative complaint being filed before the exhaustion of administrative remedies and not "on any of the merit-based facts and claims within the civil complaint." (ECF No. 43 at 6.) This argument is unavailing. The Ninth Circuit has recognized that "[e]xhaustion should be decided, if feasible, before reaching the merits of a prisoner's

17

1  claims," and "discovery directed to the merits of the suit" should be left until later. *Albino*, 747

2  F.3d at 1170. Further, the Discovery and Scheduling Order in this action expressly contemplates

3  that a motion for summary judgment for failure to exhaust administrative remedies be filed *prior*

4  *to* completion of merits discovery or the filing of other dispositive motions. (*See* ECF No. 31.)

                         3.      Availability of Grievance Process

6        Plaintiff argues that the administrative remedies were not available to him due to his

7  grievance being rejected through biased review. (ECF No. 43 at 7.) Plaintiff also contends that

8  Defendant is not entitled to summary judgment based on an administrative grievance being filed

9  too "early." (*Id.* at 6.)

10       Defendant does not acknowledge Plaintiff's argument that the language in the Office of

11  Grievances' rejection appears to state that Plaintiff filed his grievance too early. As discussed

12  above, it would be reasonable for Plaintiff to be confused about the Wasco Office of Grievances'

13  explanation for the rejection of his grievance as untimely. However, any ambiguity in the

14  language of the rejection or any resulting confusion does not change the fact that Plaintiff did not

15  clearly state at any point (until his opposition to the motion for summary judgment) that he did

16  not discover the water contamination issue until November 3, 2021, or the fact that Plaintiff's

17  grievance did not put the prison on notice of the nature of his claims against Defendant. As to

18  this latter point, it is undisputed that Plaintiff was able to utilize the administrative grievance

19  process by filing grievance 184116 and, after receiving Wasco's Office of Grievances' response,

20  by submitting an appeal. UMF 17, 18. Even if grievance 184116 had been accepted as timely

21  and/or the appeal processed through the final level review, it did not have enough information to

22  place the institution on notice of the nature of Plaintiff's claims or that those claims were brought

23  against Defendant.

24       Plaintiff also admits that he failed to exhaust his administrative remedies, but attributes

25  that failure to his haste and ignorance of the law. (ECF No.43 at 5.) Plaintiff's asserted haste in

26  filing the grievance or unfamiliarity with the law does not excuse his failure to exhaust or

27  otherwise render his administrative remedies unavailable. "A prisoner's concession to

28  nonexhaustion is a valid ground for dismissal, so long as no exception to exhaustion applies."

*Wyatt v. Terhune*, 315 F.3d 1108, 1120 (2003), *overruled on other grounds by Albino*, 747 F.3d 1162; *see also Johnson v. California Corr. Health Servs.*, No. 2:25-cv-1423 DC CSK P, 2025 WL 2623835, at *3 (E.D. Cal. Sept. 11, 2025). "A prisoner-plaintiff's personal lack of knowledge of the law is insufficient to excuse a failure to exhaust." *Ford v. Gates*, No. CV 21-0088 DMG (PVC), 2021 WL 6102926, *5 (C.D. Cal. Mar. 1, 2021) (internal quotation and citation omitted).

## IV. Conclusion and Order

Based on the foregoing, the Court finds that Plaintiff failed to exhaust his administrative remedies as his claim for deliberate indifference to conditions of confinement in violation of the Eighth Amendment against Defendant DeGough. Accordingly, IT IS HEREBY ORDERED as follows:

1. Defendant DeGough's motion for summary judgment for failure to exhaust available administrative remedies, (ECF No.40), is GRANTED;
2. This action is dismissed, without prejudice, for failure to exhaust administrative remedies; and
3. The Clerk of the Court is directed to terminate all pending motions and to close this case.

IT IS SO ORDERED.

Dated:  **September 30, 2025**          /s/ *Barbara A. McAuliffe*
                                                      UNITED STATES MAGISTRATE JUDGE